RITEWAY BUILDERS, INC., Appellant, v. FIRST NATIONAL INSURANCE COMPANY OF AMERICA, Respondent.

*January 8—February 4, 1964.*

---

[3] 27 C. J. S., Dismissal and Nonsuit, p. 403, sec. 56.

For the appellant there was a brief by *Camp & Camp,* attorneys, and *Richard F. Tyson* of counsel, all of Wauwatosa, and oral argument by *Mark Camp.*

For the respondent there was a brief by *Arnold, Murray & O'Neill,* attorneys, and *George R. Schimmel* of counsel, all of Milwaukee, and oral argument by *Mr. Schimmel.*

HALLOWS, J. We do not know whether the endorsement was attached at the time of issuance of the policy or was attached subsequently. However, this is immaterial because at the time of the collapse what constituted the policy included coverage against the peril of collapse. Endorsements insuring against perils added to the standard form of policy, either at the time of execution or later, are or become a

part of the policy and do not constitute separate and distinct policies.

The standard policy is set forth in sec. 203.01, Stats., and its use for insuring against fire and lightning is mandatory by sec. 203.06, excepting by town mutuals. Enlargement of coverage to include additional perils which an insurer is authorized to assume is contemplated by the standard policy form and expressly permitted by sec. 203.06. (It had been customary when the perils of windstorm or hail have been insured against separately from fire to use the standard form with appropriate endorsements.) The standard form of fire policy has become the basic part of modern multiple risks and so-called "home owner's policies," at least since insurance companies have been authorized to write multiple risks by secs. 201.04 and 201.05.

The standard policy by lines 157 to 161 provides, "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss." The plaintiff seeks to limit the operation of this language to the perils of fire and lightning appearing in the insuring clause of the standard form and not to apply to an endorsement increasing coverage. The term "fire insurance" so far as classifying insurance companies and their purposes and authority to do business is set forth in sec. 201.04 (1) as being, "Against loss or damage to property, by fire, lightning, hail, tempest, explosion, and against any other loss or damage from any cause to property or in the use of, or income from property." While the insuring clause of the mandatory form refers only to fire and lightning, the standard form by lines 38 to 41 provides, "Any other peril to be insured against or subject

of insurance to be covered in this policy shall be by endorsement in writing hereon or added hereto."

In considering the suit clause, we find no justification for construing the phrase, "No suit or action on this policy for the recovery of any claim" means only a fire and lightning claim or the language "within twelve months next after inception of the loss" means loss only from fire or lightning. The cases relied on by the plaintiff from other jurisdictions are not in point. They involved language in policies taken from the old New York standard fire form which provided suit had to be brought "within twelve months next after the fire." Prior to 1945 in Wisconsin, our standard policy contained such a phrase restricted to fire.

Prior to the adoption of a standard form of fire policy in the United States, fire policies often contained a twelve months' limitation within which suit could be brought "after the loss." This phrase had been variously interpreted to mean either injury, the occurrence of the fire insured against, or the date when insurer's liability arose, or the insured's cause of action accrued. The later use of the phrase "next after the fire" was an attempt to fix a definite and uniform time for the commencement of the period of limitations in all jurisdictions where the form was used. This objective was not entirely successful but in an early case Wisconsin held "next after the fire" meant "fire" and not the accrual of the cause of action. *Hart v. Citizens Ins. Co.* (1893), 86 Wis. 77, 56 N. W. 332.

In 1945 the standard form of policy was revised and other changes made relating to insurance by ch. 474, Laws of 1945. One of the changes in the standard policy amended the suit clause from "next after the fire" to "next after inception of the loss." The plaintiff argues this change was solely to include "lightning," which also appeared in the insuring clause with fire, and thus made the standard policy

consistent. This construction is at variance with the legislative history of the change and of the standard policy in Wisconsin. The language, "commenced within twelve months next after inception of the loss," means from the date of the damage suffered by the insured from any peril covered by the policy of insurance and is not restricted to the peril of fire and lightning. In *Townsend v. Milwaukee Ins. Co.* (1962), 15 Wis. (2d) 464, 113 N. W. (2d) 126, which involved a fire claim, we interpreted the phrase "inception of the loss" to mean damage which had its inception at the time of the fire.

The plaintiff finally contends the amendment by ch. 54, Laws of 1963, of sec. 201.19, Stats., indicates that prior to the amendment the suit clause in the standard policy was restricted to fire and lightning. Sec. 201.19 is a general provision prohibiting a policy of insurance from containing any provision limiting the time within which suit can be brought to a time less than that prescribed or specifically authorized by the statutes. By the amendment, a proviso was added to the prohibition that the time limit in the standard policy applies to any rider or endorsement thereto insuring property against risks of loss enumerated in sec. 201.04 (1) or any separate windstorm or hail insurance policy issued pursuant to that section. The amendment also provided that the time during which an appraisal procedure is conducted under the terms of the policy shall be excepted from the time provided for commencing an action under the standard fire policy.

We consider this amendment to be declaratory of the existing law so far as it applied to riders and endorsements on a standard policy. No decision of this court has held to the contrary. We reach this conclusion because such amendment was desirable, if not necessary, if the rest of the amendment dealing with appraisals which did change the law was to be understood. The appraisal provisions

and other requirements, such as furnishing proof of loss, provisions when the loss is payable, subrogation rights and cancellation, apply to all the perils insured by the policy, not only to fire and lightning, and there exists no reason why the suit clause should be so restricted.

The standard form plus the endorsements and riders attached thereto constitute the policy and all parts must be read together. The plaintiff must read the endorsement with the standard part of the policy for the purpose of collapse coverage; likewise, we must read the limitation in the standard part of the policy with the endorsement to deny recovery.

*By the Court.*—Order affirmed.