PER CURIAM.
¶ 1 In June 2015, a tornado damaged a barn owned by Chris and Gary Stelpflug. In March 2016, that barn caught fire. After the Stelpflugs' insurer, Rural Mutual Insurance Company, refused to pay for claims related to the fire, the Stelpflugs sued Rural, alleging breach of contract and bad faith. The Dane County Circuit Court concluded that the breach of contract claim was barred by a twelve-month statute of limitations and, on that basis, dismissed the claim. The Stelpflugs appeal that order, and we reverse.
BACKGROUND
¶ 2 The Stelpflugs allege the following in the complaint.
¶ 3 The Stelpflugs are farmers residing in Grant County, Wisconsin. They had a property and liability insurance policy with Rural that covered their residence, farm buildings, machinery, equipment, and livestock. The Rural policy also provided that, in the event of property damage, Rural shall pay for the actual loss of business income sustained due to the necessary suspension of farming operations while any damaged property is restored.
¶ 4 On June 22, 2015, a tornado caused damage to the Stelpflugs' property, including damage to the residence, farm buildings, machinery, and equipment. The Stelpflugs made a claim with Rural for the property damage and loss of business income resulting from the tornado. That claim is not at issue in this appeal.
¶ 5 On March 20, 2016, a barn that had sustained damage from the June 2015 tornado caught fire. The fire was a result of the barn shifting during the tornado, which later caused wiring to be pulled free. Equipment and vehicles stored in the barn, including a machine used to plant soybeans, were damaged in the fire. As a result, the Stelpflugs were unable to timely plant soybeans, and the planting was delayed several weeks. The Stelpflugs made a claim with Rural for the property damage and loss of business income resulting from the fire. It is this claim that is at issue in this appeal.
¶ 6 The Stelpflugs received some payments from Rural, but it is unclear to the Stelpflugs which portions of each claim were paid because Rural has not itemized or otherwise described the basis for each payment made. Ultimately, Rural ceased making payments to the Stelpflugs, and the Stelpflugs allege that Rural has not paid them the full amount due under the policy for property damage and loss of business income resulting from the fire.
¶ 7 On March 20, 2017, the Stelpflugs commenced an action against Rural, alleging breach of contract and bad faith regarding Rural's failure to pay the entire fire loss claim the Stelpflugs made on the fire insurance policy.[1] Rural filed a motion to dismiss the breach of contract claim, and the circuit court granted the motion based on the statute of limitations in WIS. STAT. § 631.83(1)(a) (2015-16).[2]
¶ 8 The Stelpflugs petitioned for leave to appeal the dismissal of the breach of contract claim, and we granted their request. See WIS. STAT. RULE 809.50(3).
¶ 9 We refer to other material facts in the Discussion that follows.
DISCUSSION
¶ 10 The parties agree that the sole issue in this appeal is whether the twelve-month statute of limitations provided in WIS. STAT. § 631.83(1)(a) bars the Stelpflugs' breach of contract claim. The parties focus their attention on the meaning of the phrase "inception of the loss" in this context.[3] Sec. 631.83(1)(a). We conclude that the "inception of the loss" occurred on the date of the fire. Therefore, the complaint was timely filed under § 631.83(1)(a).
I. Standard of Review.
¶ 11 We review de novo a circuit court order granting a defendant's motion to dismiss on the basis that the claim is barred by a statute of limitations. Mayo v. Boyd , 2014 WI App 37, ¶ 8, 353 Wis. 2d 162, 844 N.W.2d 652. Whether this particular claim is barred by the statute of limitations presents an issue of statutory interpretation that we review de novo. See Zignego Co. v. DOR , 211 Wis. 2d 819, 823, 565 N.W.2d 590 (Ct. App. 1997). "Upon a motion to dismiss, we accept as true all facts well-pleaded in the complaint and the reasonable inferences therefrom." Data Key Partners v. Permira Advisers LLC , 2014 WI 86, ¶ 19, 356 Wis. 2d 665, 849 N.W.2d 693.
II. Meaning of "Inception of the Loss."
¶ 12 Pursuant to WIS. STAT. § 631.83(1)(a), "[a]n action on a fire insurance policy must be commenced within 12 months after the inception of the loss." Sec. 631.83(1)(a). "Fire insurance" is a "generic term" and "covers indemnity insurance for losses to property caused by many other perils than fire." Villa Clement, Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa. , 120 Wis. 2d 140, 145, 353 N.W.2d 369 (Ct. App. 1984). This twelve-month statute of limitations applies "to any suit to recover for loss from any peril covered by the policy." Id. at 145-46.
¶ 13 "This is not the first time we have been asked to interpret the phrase 'inception of the loss.' " Bronsteatter & Sons, Inc. v. American Growers Ins. Co. , 2005 WI App 192, ¶ 8, 286 Wis. 2d 782, 703 N.W.2d 757. Accordingly, we begin by reviewing prior case law.
¶ 14 We have held that "inception of the loss" "clearly and unambiguously means the date on which the loss occurs ." Borgen v. Economy Preferred Ins. Co. , 176 Wis. 2d 498, 504-05, 500 N.W.2d 419 (Ct. App. 1993) (emphasis added). In Borgen , a hail storm damaged the plaintiffs' roof in August 1989. Id. at 502. The plaintiffs commenced an action to recover the cost of the hail damage in June 1991. Id. We concluded that the claim was time-barred under the twelve-month statute of limitations because " 'inception of the loss' refers to the date of the injury or damage," in that case the time of the damage-creating hail storm. Id. at 501, 506 ; see also Riteway Builders, Inc. v. First Nat. Ins. Co. of Am. , 22 Wis. 2d 418, 423, 126 N.W.2d 24 (1964) (statute of limitations begins to run "from the date of the damage suffered by the insured from any peril covered by the policy of insurance.").
¶ 15 We revisited WIS. STAT. § 631.83(1)(a) in Arnold v. Cincinnati Ins. Co. , 2004 WI App 195, 276 Wis. 2d 762, 688 N.W.2d 708. In Arnold , mold began to grow in the siding on the Arnolds' home. Id. , ¶ 5. The Arnolds hired a contractor to remediate the mold by cleaning, stripping, and restaining the siding. Id. , ¶¶ 5-6. During the remediation process, the stripping product damaged parts of the Arnolds' home. Id. , ¶¶ 7, 10. The Arnolds filed suit against the contractor and also sought payments from their own insurer. Id. , ¶ 8.
¶ 16 The insurer argued that the "inception of the loss" was the date on which the mold began to grow in the siding. Id. , ¶ 51. We rejected that argument and held that the "inception of the loss" was the date on which the contractor applied the stripping product that damaged parts of the home. Id. , ¶ 53. We reasoned that the "physical loss ... for which the Arnolds [sought] coverage did not occur before [the contractor] applied the stripping product." Id. (emphasis added). Our holding focused on when the loss, or damage, for which coverage was sought actually occurred.
¶ 17 Most recently, in Bronsteatter , we again considered the phrase "inception of the loss." There, Bronsteatter's twelve-row planter was vandalized, damaging the mechanism that regulated the flow of fertilizer into two of the rows. Bronsteatter , 286 Wis. 2d 782, ¶ 3. Bronsteatter did not know about the vandalism and used the damaged planter to plant corn. Id. Because of the damaged mechanism, seeds planted in certain rows received too much fertilizer and did not germinate. Id. Bronsteatter eventually discovered the vandalism after realizing that two out of every twelve rows were not growing. Id.
¶ 18 Bronsteatter argued that the "inception of the loss" occurred when it completed its harvest and recognized a significantly reduced crop yield. Id. , ¶ 7. The insurer argued that the "inception of the loss" occurred when the planter was vandalized. Id. We rejected both arguments and adopted a third approach: the "inception of the loss" occurred at the time of planting. Id. We identified the "loss" as the reduced number of crops and concluded that the "inception of that loss was the moment the overfertilized seeds were planted with the vandalized corn planter." Id. , ¶ 10. We reasoned that, while Bronsteatter did not know what its crop yield would be and therefore could not precisely value the loss at that time, the damage and the loss nevertheless occurred at the time of planting because only ten of every twelve rows germinated. Id. The reduced crop yield was merely a quantifiable measure of the value of the loss recognized at harvest. See id. As in Arnold , our analysis did not focus on causation or trace the loss back to its initial cause, the act of vandalism. Thus, we reaffirmed the long-standing rule that "inception of the loss" refers to the date of the loss, or damage.
¶ 19 We now turn to the facts of this case.
III. The "Inception of the Loss" Occurred on the Date of the Barn Fire.
¶ 20 Rural asserts that the "inception of the loss" occurred on the date of the tornado because some form of damage to the barn began on that date. The Stelpflugs argue that there are two separate losses because damages occurred on two dates, the date of the tornado and the date of the fire. The Stelpflugs contend that they seek payment from Rural not for damages resulting from the tornado, but for damages resulting from the fire which are distinct from the tornado damages. Therefore, according to the Stelpflugs, the "inception of the loss" occurred on the date of the fire. We agree with the Stelpflugs.
¶ 21 Given the allegations in the complaint, which we must accept as true, we conclude that there were two separate "losses" because there are two distinct sets of damages alleged by the Stelpflugs. The complaint, reasonably read, shows that the Stelpflugs' breach of contract claim is for damages resulting from the fire, and not damages directly arising from the tornado. For example, the Stelpflugs' complaint alleges that the fire damaged and destroyed equipment and vehicles stored in the barn. The Stelpflugs further allege that, as a result of the fire damage to that equipment, they were unable to timely plant soybeans and will suffer loss of business income. According to the Stelpflugs, Rural has denied payment for the alleged property damage and loss of business income resulting from the fire. Taking these facts as true, we conclude that the Stelpflugs' breach of contract claim is addressed only at Rural's refusal to pay for damages resulting from the fire, and not at any damages directly arising from the tornado.[4] The damages resulting from the fire did not exist until March 20, 2016. Because the Stelpflugs seek coverage only for those damages, the "inception of the loss" occurred on March 20, 2016. Therefore, the complaint was timely filed.[5]
¶ 22 Rural attempts to ignore the allegations in the complaint through several arguments, and we reject each.
¶ 23 First, Rural tries to divert attention from the word "loss" to focus exclusively on the word "inception." For example, at a hearing in the circuit court, Rural argued that the tornado "set in motion the chain of events that led to the barn burning down in March." Rural also argues in this court that the "inception of the loss" was the date of the tornado, "even if the full consequences of the damage to [the] barn would not be understood for several months." Rural's contention fails because, to properly identify the "inception," the analysis must necessarily consider the particular "loss" at issue in the insurance claim. As discussed in the context of a fire insurance policy action, the word "loss" reasonably equates to the word "damages." See Bronsteatter , 286 Wis. 2d 782, ¶¶ 9-10. In addition, as we have explained, case law holds that the "inception of the loss" is the date on which the loss, i.e. damages, for which the insured seeks coverage occurred. See id. , ¶ 8; Arnold , 276 Wis. 2d 762, ¶ 53 ; Borgen , 176 Wis. 2d at 506. Here, the loss for which the Stelpflugs seek coverage is damage resulting from the fire, and not damage resulting from the tornado.
¶ 24 We also reject Rural's suggestion that the Stelpflugs merely discovered the full extent of the damages after the fire. This argument goes nowhere because the present dispute does not concern a loss that the Stelpflugs discovered well after it had already occurred, as in Borgen . The property damages and loss of business income resulting from the fire was not an undiscovered loss of which the Stelpflugs finally became aware on March 20, 2016. Rather, the damage for which the Stelpflugs seek coverage did not exist until March 20, 2016. Therefore, March 20, 2016 is the date on which the damage resulting from the fire occurred.
¶ 25 Nothing in WIS. STAT. § 631.83(1)(a), or the case law, suggests that separate sets of damages to related or proximate property must be lumped together and connected to a single inception in the manner that Rural advocates. In fact, our supreme court has previously held that, in a case with two separate fires, there could be an "inception of the loss" "at the time of each of the fires." Townsend v. Milwaukee Ins. Co. , 15 Wis. 2d 464, 468, 113 N.W.2d 126 (1962).
¶ 26 Rural's arguments cast matters in a perspective that is incompatible with the language in WIS. STAT. § 631.83(1)(a) and case law. Rural attempts to frame the Stelpflugs' cause of action as "seeking compensation for damage to [the] barn." From this mistaken perspective, Rural suggests that each set of damages must share the same inception. But, simply because damages from the tornado and damages from the fire affected the same barn, that does not mean our analysis must treat each set of damages to be part of a singular "loss."
¶ 27 In sum, we conclude that the "inception of the loss" occurred on March 20, 2016, the date of the fire. Because the Stelpflugs filed the breach of contract claim within twelve months of the fire, the complaint was timely filed.[6]
¶ 28 To be clear, our decision is confined solely to the issue of whether the complaint was timely filed under WIS. STAT. § 631.83(1)(a), and, under our analysis, the Stelpflugs' breach of contract claim is limited to damages resulting from the fire. We express no opinion as to any defenses premised on legal causation or whether specific damages claimed by the Stelpflugs resulted from the tornado as opposed to the fire.
CONCLUSION
¶ 29 For the foregoing reasons, the order is reversed and the cause is remanded for further proceedings consistent with this opinion.
By the Court. -Order reversed and cause remanded.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

The bad faith claim was not dismissed by the circuit court, is not a part of this appeal, and we do not discuss it further.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

In this appeal, Rural does not dispute that, setting aside the statute of limitations issue, the complaint states a valid cause of action for breach of contract.
Separately, we note that the parties do not dispute that the Stelpflugs filed their complaint on March 20, 2017 and the fire occurred on March 20, 2016, exactly twelve months before the Stelpflugs filed the complaint. In other words, Rural does not dispute that, if the "inception of the loss" occurred on the date of the fire, the complaint was timely filed. See Wis. Stat. § 990.001(4)(d) ; Pufahl v. Williams , 179 Wis. 2d 104, 107, 506 N.W.2d 747 (1993).

At a hearing in the circuit court, the Stelpflugs expressly disclaimed any claim to coverage for damages resulting from the tornado.

Indeed, Rural does not dispute that there were two different sets of damages to the barn and its contents, one from the tornado, and one from the fire. For example, at a hearing in the circuit court, Rural acknowledged that "[t]here was additional damage in March, but it began back in June." In its brief in this court, Rural concedes that "[a]dditional damage may have occurred in March 2016 [the time of the fire]."

The parties also briefed the issue of whether the circuit court should have invoked its equitable powers to estop Rural from asserting the statute of limitations defense. See State ex rel. Susedik v. Knutson , 52 Wis. 2d 593, 596-97, 191 N.W.2d 23 (1971) (listing six rules for determining equitable estoppel issue). Because we conclude that the statute of limitations does not bar the breach of contract claim, we need not address the issue of whether the equitable estoppel argument was properly before us. See Barrows v. American Family Ins. Co. , 2014 WI App 11, ¶ 9, 352 Wis. 2d 436, 842 N.W.2d 508 ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").